# IN THE COURT OF APPEALS OF IOWA

No. 15-1611
Filed August 31, 2016

IN RE THE MARRIAGE OF TIMOTHY LINDEN WAGGENER
AND CLAUDIA CATHERINE WAGGENER

Upon the Petition of
**TIMOTHY LINDEN WAGGENER,**
     Petitioner-Appellee,

**And Concerning**
**CLAUDIA CATHERINE WAGGENER,**
     Respondent-Appellant.

_____

Appeal from the Iowa District Court for Linn County, Mitchell E. Turner,

Judge.

A former wife appeals the property distribution provisions of the district

court's dissolution decree. **AFFIRMED.**

John G. Daufeldt of Daufeldt Law Firm, P.L.C., Conroy, for appellant.

Dawn D. Long of Howes Law Firm, P.C., Cedar Rapids, for appellee.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Presiding Judge.**

Claudia Waggener appeals the property distribution provision of the decree dissolving her marriage to Timothy Waggener. She claims the court erred in awarding Timothy the farm, which was the former marital residence, when, in her opinion, Timothy "contributed nothing" to the acquisition or maintenance of marital property. Claudia asserts there was other property Timothy could receive in lieu of the farm that would be more equitable and provide Timothy an income stream. Because we conclude the property distribution was equitable, we affirm the district court's decree.

The parties were married for thirty-three years but separated for the last thirteen of those years. At the time of trial, Timothy was seventy-one years old, and Claudia was sixty-eight. Claudia appeared to be in better health, both mentally and physically. The district court noted the evidence established:

> Claudia appears to have been almost completely in charge of the family's finances and paid the vast majority of the housing and living expenses over the years from her income, while Timothy generally used his income to acquire "stuff" such as broken down cars, tractors, trailers, machinery, and things of this nature, most of which was towed to and then left in the weeds at the [farm].

In addition to the farm, the parties owned several other pieces of real estate of substantial value, including rental properties. The court noted that the contested issue between the parties centered on who should be awarded the farm property. Both parties asserted they would live at the farm if they were awarded the property, but the court doubted the sincerity of Claudia's claim:

> Claudia remained living at the [farm] acreage until approximately 2011, when she moved to the property which she inherited from Timothy's mother . . . . At the time of trial Claudia testified that she intends to return to the [farm] acreage to live and

implies that she never actually moved out from the property. The Court does not find that testimony to be credible. The house to which she says she wants to return was built in 1900 and has approximately 1150 square feet. The condition of the property is deplorable—the roof leaks, the pipes have burst, and it has not been maintained for years. According to the appraisal of the property which was done by Gary Caldwell: "There is a very old dwelling and several very old sheds on the site that are in various stages of disrepair. Because of the very poor conditions of the buildings they detract from, not add to, the value of the overall property." Since Claudia moved from the property . . . Timothy has taken up periodic residence on the property in a dilapidated trailer where he stays during periods of time in the spring, summer, and fall. Similarly, Timothy has once again begun accumulating old cars, tractors, and machinery and is storing them on the property. . . .

. . . .

As stated earlier in this section, the ownership and possession of the [farm] acreage appears to be the primary point of contention in this dissolution proceeding. Both parties maintain that is their desire to reside on the property—Timothy in a trailer which he would bring onto the property, and Claudia in the dilapidated house on the property. The Court has no doubt that Timothy will, in fact, reside on the property, but has very serious doubts as to Claudia's actual intent to reside at the acreage. As an alternative to the property being awarded to her, Claudia contends that the property should be sold, and the net proceeds equally divided.

Ultimately the court awarded the farm property to Timothy:

Having weighed the positions of the parties very carefully, the Court finds that the [farm] acreage should be awarded to Timothy, subject to the award of an equalization judgment in favor of one of the parties after considering the distribution of the entire marital estate as set forth later in these Findings of Fact.

The court specifically rejected Claudia's request to consider Timothy's

past financial behavior when making its property distribution decision:

While Claudia was unquestionably far more financially responsible than Timothy during the term of the marriage (and during the separation), the Court is unable to make any type of a finding that Timothy wasted marital assets. Claudia implies that the Court should somehow take Timothy's financial irresponsibility into account in these proceedings where the Court is required to equitably divide the assets and liabilities acquired during the term of

the marriage. The problem is that Claudia was fully aware of how Timothy spent his money and either consented or at least acquiesced in this conduct for many years. . . . It is not the Court's role at this point to go back in time and re-examine and make adjustments for the financial decisions that the parties made, or did not make, during virtually the entire course of their marriage. "Fault" is not a proper consideration when crafting an equitable division of the assets and liabilities acquired during the term of the marriage.

In a dissolution proceeding, a court is to consider a multitude of factors when determining an equitable division of the marital property. *See* Iowa Code § 598.21(5)(a)–(m) (2013) (enumerating the factors the court should consider when distributing property). Fault is not a factor to be considered when awarding property in a dissolution proceeding. *In re Marriage of Williams*, 199 N.W.2d 339, 345 (Iowa 1972). While the court can consider a party's dissipation or waste of the marital assets, *see In re Marriage of Kimbro*, 826 N.W.2d 696, 700 (Iowa 2013), the district court concluded, and we agree, there was no evidence Timothy wrongfully dissipated marital assets during the parties' lengthy separation. For the district court, the decision of which party should be awarded the farm boiled down to whom would be more likely to reside on the property. The district court concluded Claudia was not credible in her assertion that she would once again take up residence on the property. Upon our de novo review of the record, we agree with the district court's property distribution, including the cash equalization payment, and we affirm the dissolution decree without further opinion. *See* Iowa Ct. R. 21.26(1)(d); *Kimbro*, 826 N.W.2d at 698 (noting our de novo review of dissolution cases).

Timothy requests an award of appellate attorney fees. It is within our discretion to award appellate attorney fees in dissolution cases, and we consider

a number of factors. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007) ("We consider the needs of the party making the request, the ability of the other party to pay, and whether the party was required to defend the district court's decision on appeal."). Because Timothy was required to defend the district court's decision, we award him $3000.00 in appellate attorney fees.

**AFFIRMED.**